# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

HEATHER McEACHERN BESING
and RAY G. BESING,

    Plaintiffs,

vs.                  No. CV 99-757 SC/DJS

AMERICA WEST HOLDINGS CORP., INC.
and CONNECTICUT GENERAL LIFE
INSURANCE COMPANY,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on (1) Defendants' Motion To Dismiss Plaintiffs' First Amended Complaint, filed August 30, 1999 (Doc. No. 9), (2) Plaintiffs' Motion For Partial Summary Judgment, filed September 22, 1999 (Doc. No. 12), and (3) Defendants' Motion For Leave To File Surreply, filed October 21, 1999 (Doc. No. 18). For the reasons contained in this opinion, the motion to dismiss will be GRANTED, and the motions for partial summary judgment and to file a surreply will be DENIED AS MOOT.

This is an action for damages and injunctive relief under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* Plaintiff Heather

McEachern Besing retired from her employment with Defendant America West Holdings Corporation ("America West") on July 31, 1998. Under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), Plaintiffs became eligible for continuation of their health benefits plan for a period of 18 months, and Mrs. Besing elected to continue their participation in the plan. When she exercised Plaintiffs' COBRA rights, the health care plan sponsored by America West was administered by Defendant Connecticut General Life Insurance Company and was described as a Preferred Provider Organization ("PPO") plan. In early 1999, America West switched its employee health care benefits to a Point of Service ("POS") plan, with a different type of coverage.

Plaintiffs allege that after Mrs. Besing's retirement in 1998, their medical and prescription bills were paid in accordance with the PPO plan, and that sometime in March 1999 they learned that the Defendants were not paying for most of their prescriptions, and that many of their treating physicians were not being paid for their services or were grossly underpaid for their services. Plaintiffs also allege that on or about January 1, 1999, Defendants had arranged to terminate or cancel the PPO plan and to adopt a new plan for employees and COBRA participants under Lovelace Health Care which provides much more limited coverages. Plaintiffs allege that their physicians' charges have been rejected or only partially paid, some prescriptions have not been paid at all, and most of their physicians are not acceptable under the new plan of Lovelace. Plaintiffs further allege that they have continuing medical and prescription needs for their chronic and

periodic illnesses and injuries, and that they have struggled for months to secure payment in accordance with the terms of the PPO plan, which they allege has been in force and effect both before and after Mrs. Besing's retirement. They have had to borrow funds to pay for some of the medical expenses and prescriptions, and are facing demands for payment for others.

At the core of their case, Plaintiffs allege that under the terms of COBRA, they are entitled to have the same coverage continued as long as they are eligible for COBRA benefits as was provided at the time of Mrs. Besing's retirement, the qualifying event that triggered their COBRA eligibility. They allege that Defendants breached their duties under ERISA and COBRA to provide the same benefits under the PPO plan, and in addition to their money damages, they seek an injunction to put them in the positions they would have been in under the PPO plan.

**Motion To Dismiss**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In ruling on a motion to dismiss for failure to state a claim for which relief can be granted, I accept the factual allegations of the complaint as true. Settles v. Golden Rule Ins. Co., 927 F.2d 505 (10th Cir. 1991). The claim is not dismissed unless there is no set of facts under which plaintiff would be entitled to relief. H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229 (1989); Settles, 927 F.2d at 507.

Plaintiffs' claim boils down to one question: is a company offering health benefits

3

required to guarantee COBRA participants the same type of coverage throughout their COBRA period, even if the company changes coverage for all other participants in the same plan? Plaintiffs' theory is that Defendants breached a duty owed to the Plaintiffs under COBRA when they switched from the PPO plan in effect at the time of Mrs. Besing's retirement to a new and different POS plan a few months later. They assert that the very purpose of the COBRA "continuation" provision is to permit a former employee to pay his or her own monthly insurance premiums and thereby "continue," for another 18 months, the same medical insurance coverage he or she was under at the time of the qualifying event.

Employers sponsoring group health plans are required by COBRA to provide continuation coverage to qualified beneficiaries who would otherwise lose coverage under the plan as a result of a "qualifying event" such as retirement. 29 U.S.C. §§ 1161(a) and 1163(2). Continuation coverage is defined as coverage "identical to the coverage provided under the plan to similarly situated beneficiaries" who have not lost coverage. 29 U.S.C. § 1162(1). The purpose of COBRA is to provide temporary extension of health insurance at (lower) group rates after events that would otherwise disqualify persons from eligibility for group coverage through an employer. *See* Local 217, Hotel & Restaurant Employees Union v. MHM, Inc., 976 F.2d 805, 809 (2d Cir. 1992); Hubicki v. Amtrak Nat'l Passenger R.R. Co., 808 F. Supp. 192, 196 (E.D. N.Y. 1992).

ERISA does not create substantive entitlement to employer-provided health

4

benefits.  See Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78 (1995).

Therefore, America West was entitled to modify coverage for its employees.  Id.; Chiles v. Ceridian Corp., 95 F.3d 1505, 1510 (10th Cir. 1996) ("An employer or plan sponsor may unilaterally modify or terminate welfare benefits, unless it contractually agrees to grant vested benefits.").  ERISA provides:

> If coverage is modified under the plan for any group of similarly situated beneficiaries, such coverage shall also be modified in the same manner for all individuals who are qualified beneficiaries under the plan pursuant to [COBRA] in connection with such group.

29 U.S.C. § 1162(1) (bracketed material added).  Thus, Defendants reason, they were actually required by this statute to modify coverage for COBRA beneficiaries when they modified coverage for their active employees.  I agree.

Plaintiffs rely entirely upon one case supposedly in support of their theory:  In the Matter of AppleTree Markets, Inc., 19 F.3d 969 (5th Cir. 1994).  They quote the following language of that case, commenting on the meaning of § 1161(a) of ERISA:

> Thus, the plan sponsor of a group health plan must offer continuation coverage to employees, their spouses, and dependents who become qualified for such coverage while covered by the plan, and that coverage is to be provided under the plan in which the beneficiary participated at the time the qualifying event occurred.

Id., 19 F.3d at 971.  Plaintiffs argue that the plan in which they participated at the time Mrs. Besing's retirement occurred was the PPO plan, not the later POS plan, and that they are therefore entitled to have their benefits under the PPO plan continued throughout

5

their 18-month COBRA eligibility period.

This argument is not at all supported by the holding of AppleTree, in which the issue before the court was not whether a plan sponsor could change the original coverage provided to COBRA participants during the 18-month COBRA period. The issue in AppleTree was whether a multiemployer health plan of which the employer AppleTree had been a member when its employees became COBRA-eligible, or a new single-employer health plan created later by AppleTree, was responsible for paying for the COBRA coverage of former employees of AppleTree.

In an attempt to skirt the plain language of 29 U.S.C. § 1162(1), Plaintiffs argue that § 1162 does not apply because Defendants did not "modify" the group health plan, but completely "replaced" it with a new and different plan, which is equivalent to a "discrete movement from one plan to another." They argue that the motion to dismiss must be denied because the Court must accept as true the allegations in their Complaint that Defendants "terminated or canceled" the plan and adopted "an entirely different" plan, which negates the assertion that the plan was merely "modified." *See* Am. Compl. ¶9 at 5. They quote the following language in AppleTree in support of this argument:

> UFCW [the multiemployer plan sponsor] claims that § 1162(1) requires an employer that modifies health coverage for its employees by transferring them from one plan to another, but does not terminate all of its health plans, to transfer coverage for all COBRA-qualified beneficiaries as well. According to UFCW, 'similarly situated beneficiaries' are AppleTree's active employees and their dependents who have not experienced a COBRA-qualifying event. Further, when the active employees' 'coverage' was 'modified,' the

> COBRA beneficiaries coverage must be changed identically.
>
> UFCW's reading of the statute is strained and insupportable by the language of § 1162(1). A natural reading of § 1162(1) reveals an intent to forbid plan sponsors from discriminating between COBRA and active employees *within a given plan.*
>
> There is no support for UFCW's position that a discrete movement from one plan to another can qualify as a modification of coverage under the original plan. The statute refers to a modification of coverage under *the* plan. This implication that the statute is intended to prevent discrimination within a single plan cannot reasonably be read to extend to those participating in a separate plan.
>
> Thus, § 1162(1) does not apply to this case and would become relevant only if UFCW modified coverage to active employees participating in its plan. If so, § 1162(1) would require it to modify similarly the benefits of beneficiaries of continuation coverage. Nothing in § 1162(1) requires an entity that has never previously sponsored health care coverage for an individual to provide continuation coverage to him simply because it later gives coverage to others.

AppleTree, 19 F.3d at 972 (bracketed material added; emphasis in original). This language does not support Plaintiffs' argument, and the language in the last quoted paragraph actually supports my holding. The AppleTree court simply held that § 1162(1) did not apply because an employer who makes a discreet movement from participating in a multiemployer plan to providing a separate, single-employer plan, is not modifying a plan. The AppleTree single-employer plan did not exist when AppleTree's COBRA beneficiaries experienced their qualifying events, and so AppleTree was not the "plan sponsor" of "the plan." Thus AppleTree did not suddenly become responsible for providing COBRA coverage under its new, single-employer plan. Rather UFCW, the plan sponsor of the original multiemployer plan, remained responsible for COBRA

7

coverage.

Even accepting Plaintiffs' allegations as true, in substance Defendants here did not go from no plan to a new plan, or from a multiemployer plan to a single-employer plan. They simply changed the type of coverage they provide to employees under the plan, and so the coverage to COBRA beneficiaries may, in fact must, be modified in the same way.

For these reasons, Defendants' motion to dismiss will be GRANTED. Because Plaintiffs have failed to state a claim upon which relief may be granted, and because there is no set of facts under which Plaintiffs would be entitled to relief on their ERISA claim, their motion for summary judgment is moot, as is Defendants' motion to file a surreply to the summary judgment motion. Additionally, Defendants have requested that the Court award their attorneys' fees to be paid by Plaintiffs, calling Plaintiffs' claims far-fetched. While I agree that the ERISA claim is far-fetched, and although I find that the filing of Plaintiffs' summary judgment motion was unnecessary surplusage, I do not find that these *pro se* Plaintiffs acted in bad faith in bringing or maintaining this suit, and I decline to award fees.

NOW, THEREFORE, IT IS ORDERED that Defendants' Motion To Dismiss Plaintiffs' First Amended Complaint is hereby GRANTED. An Order of Dismissal shall be entered herewith.

IT IS FURTHER ORDERED that Plaintiffs' Motion For Partial Summary

Judgment and Defendants' Motion For Leave To File Surreply are hereby DENIED AS MOOT.

  _____
  SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiffs:  Plaintiffs are proceeding *pro se*

Counsel for Defendants:  Danielle R. Panter, HURLEY, TOEVS, STYLES, HAMBLIN & PANTER, Albuquerque, N.M. and Wayne C. Wolf, Albuquerque, N.M.